UNITED STATES DISTRICT COURT
COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| THOMAS MCNIFF, <br>     Plaintiff <br><br> v. <br><br> TOWN OF DRACUT, <br>     Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> )    C.A. No. 05CV10238 RBC <br> ) <br> ) <br> ) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

**I. FACTS**

Pursuant to Local Rule 56.1, the Defendant has submitted the accompanying Concise Statement of Material Facts as to which there is No Genuine Issue to be Tried, which is incorporated here by reference. The crux of Plaintiff's Complaint is that his was improperly bypassed for the position of Provisional Chief of Police purportedly due to his suffering from a disability. In contrast, the Summary Judgment record reflects that the Plaintiff did not suffer from a disability cognizable under federal law, that the Town was not even aware of his claimed disability, and that the Town had legitimate non-discriminatory grounds for bypassing Plaintiff for the Acting Chief's position.

The salient facts are as follows:[1] Plaintiff, a Captain on the Dracut Police Department, notified his employers in December 2002 of his intent to retire effective two years later, on December 31, 2004. Plaintiff, having accumulated some 250 days of sick leave during his tenure at the Department, began a pattern of sick leave usage decreasing that balance to 128 days by November 2004. Plaintiff was eligible to receive compensation for up to 120 sick days at the time

---

[1] Unless otherwise indicated, all factual averments contained herein are supported by the Defendant's comprehensive Statement of Undisputed Facts accompanying this Memorandum. Thus the citations to the record here are omitted for brevity.

of his retirement. Plaintiff had provided a medical note telling his employer of Plaintiff's need for surgery for an undisclosed ailment in August 2004, accounting for approximately 37 of the 152 sick days he had taken. The remaining 113 sick days were used in a pattern which suggest abuse to his employers because the days taken often fell in the middle of the week, allowing Plaintiff to work paid overtime details on weekends.

In June 2004, nearly 17 months after Plaintiff announced his retirement, the incumbent Chief, Louis Panas, announced his retirement. Chief Panas later recommended Lt. Kevin Richardson for appointment as Provisional Police Chief until the civil service examination for Police Chiefs could be arranged and a new permanent Chief appointed. The appointing authority, Town Manager Piendak, agreed with this recommendation, and also agreed with Chief Panas' recommendation to bypass Plaintiff for the Provisional Chief's position. The Town Manager sought and obtained the approval of the State Civil Service Unit for this bypass decision. The Town Manager decided Lt. Kevin Richardson was a better candidate for the position. In addition to identifying a better candidate, the Town Manager decided to bypass Plaintiff for a number of reasons, including Plaintiff's earlier noticed retirement, Plaintiff's sick leave usage patterns suggested abuse, Plaintiff's violation of the conflict of interest laws in 1997, Plaintiff's suspension for three days in 1999 for violating Department Rules, and Plaintiff's demonstrated disinterest in a leadership role by not seeking the position of Provisional Deputy Chief in 2003. The Town Manager and Police Chief Panas did not learn that Plaintiff's surgery in August 2004, causing him to miss approximately 37 days of work, was due to prostate cancer until the Plaintiff filed this lawsuit. Plaintiff never informed his employers of this and instructed his doctors not to do so. Plaintiff never requested any accommodations after his cancer surgery and was able to complete his assigned duties without restrictions.

Plaintiff's Complaint contains five counts. Count One, entitled "Mass. Gen. L. 151, Sec. 4 (16)," alleges that Dracut has unlawfully discriminated against Plaintiff due to his prostate cancer disability. Count Two, entitled "Article CXIV," alleges that Plaintiff's rights under Article CXIV of the Constitution of the Commonwealth of Massachusetts were violated because he was discriminated against because of his handicap as a person who has prostate cancer. Count Three, entitled "Americans With Disability Act," alleges that Plaintiff was "subject to an adverse action and treated less favorably than persons who were not handicapped." Count Four, entitled "Equal Protection Clause," alleges that Plaintiff was treated differently by Dracut in violation of the U.S. and Massachusetts Constitution which prohibits discrimination based upon age. Count Five, entitled "Violation Mass. Gen. L. c.31, sec. 15," alleges that Dracut violated the Massachusetts statute by failing to appoint Plaintiff as interim Chief as he was the highest-ranking officer based upon civil service ranking. Plaintiff has expressly waived his claims under Count IV for Equal Protection.[2] See Pl.'s Int. Ans. No.s 15 & 21 (stating Plaintiff no longer contends the adverse action was based on age; and no longer contends the Defendant violated the Equal Protection clause). For the reasons that follow, the Defendant is entitled to Summary Judgment as to each of the four remaining counts.

## II. STANDARD OF REVIEW

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories,

---

[2] The Equal Protection claim, premised upon alleged age discrimination, would have failed nonetheless. For instance, the Supreme Judicial Court recently held that "an age disparity of less than five years, by itself, is too insignificant to support a prima facie case of age discrimination." Knight v. Avon Products, Inc., 438 Mass. 413, 425 (2003). Lieutenant Richardson who was appointed Provisional Chief, was 52 years old, only three years younger than the Plaintiff, and therefore within the five-year threshold established by the Supreme Judicial Court in Knight. In addition, the Town of Dracut is the only Defendant. It is well-settled that municipal liability under §1983 cannot be based on a theory of respondeat superior. Monell v. Department of Social Services, 436 U.S. 658 (1978). Absent evidence of the official custom, policy or practice, a municipality cannot be held vicariously liable for the unconstitutional acts of its officers or employees. Id. at 665.

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once the movant avers 'an absence of evidence to support the nonmoving party's case, ... the latter must adduce specific facts establishing the existence of at least one issue that is both 'genuine' and 'material.'" Sheinkopf v. Stone, 927 F.2d 1259, 1261 (1st Cir. 1991) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986). While a court must examine the record in the light most favorable to the opposing party, "Rule 56 does not invite a court to enter the realm of surmise." Local 48 v. United Brotherhood of Carpenters & Joiners, 920 F.2d 1047, 1051 (1st Cir. 1990). "[W]here elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994) (citations omitted).

### III. ARGUMENT

#### A. No Violation of Americans With Disability Act

The Americans with Disabilities Act ("ADA") provides that: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges." 42 U.S.C. § 12111(a). In order to recover under the ADA Plaintiff must prove that he: i) has a disability within the meaning of the Act; (ii) is qualified to perform the essential functions of the job, with or without essential accommodations; (iii) was subject to an adverse employment action by a

4

company subject to the Act; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered damages as a result. Jacques v. Clean-UP Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996).

### 1. **Plaintiff Did Not Suffer From a Disability Cognizable by the ADA**

The Plaintiff contends that his "disability" was having suffered from prostate cancer.[3] See Pl.'s Ans. Interrog. No. 8. The ADA does not identify those conditions it considers to be disabilities, rather the existence of disabilities under the ADA is determined on a case-by-case basis. Albertson's Inc. v. Kirkingburg, 527 U.S. 555, 566 (1999). The ADA definitions section states that "[t]he term 'disability' means, with respect to an individual – (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." See 42 U.S.C. § 12102(2). In the present case it is undisputed that the Town was not aware of the Plaintiff suffering from prostate cancer until after the filing of the lawsuit in this case. See Aff. of L. Panas ¶ 8; Aff. of D. Piendak at ¶ 14. Thus Plaintiff cannot rest his claim on the "being regarded as impaired" definition, and must instead establish that his cancer "substantially limits one or more major life activities."[4]

Although the ADA does not define "substantially limits" and "major life activities", the regulations promulgated by the Equal Employment Opportunity Commission "provide significant

---

[3] Notably, at his deposition, Plaintiff also identified having suffered from skin cancer on his nose as a basis of his disability claim. See Pl.'s Depo. pp. 180.

[4] The Plaintiff's surgery for skin cancer on his nose was allegedly known to his employer shortly after the fact. See Pl.'s Depo. pp. 104 (stating Plaintiff's wife told Chief Panas right after the surgery). There is no evidence, however, that the existence of this skin cancer was regarded by the employer as substantially limiting Plaintiff's major activities.

guidance."[5] Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 (5th Cir. 1995). They state that "[m]ajor life activities" "means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." See 29 C.F.R. § 1630.2(i). In addition, "substantially limits" "means ... [u]nable to perform a major life activity that the average person in the general population can perform; or ... [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to ... the general population." See 29 C.F.R. § 1630.2(j). In construing the scope and proper application of the ADA, the Supreme Court has concluded that the phrases "substantially limits" and "major life activity" must be "interpreted strictly to create a demanding standard for qualifying as disabled." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002). In short, to demonstrate that he or she falls within the scope of the ADA, an individual bears a substantial burden of proof. See, e.g., Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C., 258 F.3d 30, 33 (1st Cir.2001) (holding that to prevail, the plaintiff must establish that her impairment "was profound enough and of sufficient duration ... to hamper her ability" to engage in one or more major life activities).

Plaintiff in the present case has not articulated precisely what "major life activity" was substantially impaired by his disability. Because the central dispute in this case is the failure to promote Plaintiff to Provisional Chief, the Defendant presumes that the "major life activity" affected

---

[5] The Code of Federal Regulations also defines "physical impairment" as meaning "Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 CFR § 1630.2(h)(1). The Defendants concede that under this definition, Plaintiffs ailments of prostate cancer and skin cancer may be deemed "impairments."

was that of "work." See Pl.'s Compl. ¶¶ 8-10 (alleging Plaintiff wrongfully not appointed as interim Chief). The Plaintiff's deposition testimony, however, precludes any claims of impairment of any "major life activities," such as working, or others like walking, seeing, hearing, or speaking. Indeed, the Plaintiff stated his prostate cancer surgery and recuperation caused him to miss approximately 36 days from work. See Pl.'s Depo. pp. 112-113. This recuperation time was due to having a catheter for two weeks and recovering from "major surgery." See Pl.'s Depo. pp. 113-114. Upon his return to duty, Plaintiff acknowledged that he did not advise his employers that he had any limitations on his return to work. See Pl.'s Depo. p. 117. Nor did he request any accommodations from his employer. See Pl.'s Depo. p. 117. His cancer treatments did not require radiation or chemotherapy. See Pl.'s Depo. p. 113. Although Plaintiff would only concede that he was "close" to being able to function the same as he could before the cancer surgery, he explained that he did not "want to wrestle with anybody," and admitted that as the Department's prosecuting Court Officer he was not required to physically handle prisoners. See Pl.'s Depo. pp. 114-115.

     Plaintiff's skin cancer on his nose required four hours of outpatient surgery, followed by two weeks of wearing bandages on his nose, and the removal of stitches and follow-up laser surgery to reduce the scarring. See Pl.'s Depo. pp. 100-102. Plaintiff estimates he missed a total of 10 to 20 days from work due to the nose surgery for skin cancer. See Pl.'s Depo. p. 103. Upon his return to work after the surgery he never advised his employers that he needed any accommodations to do his job, nor that he was limited in his abilities in any way. See Pl.'s Depo. p. 117. Other than the two cancer surgeries, Plaintiff did not suffer from any other medical conditions requiring him to take extended sick leave. See Pl.'s Depo. pp. 117-118.

     The record reflects that even though he suffered from prostate and skin cancer, the Plaintiff's "major life activity" of working was not affected. "Merely having an impairment does not make one

disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002). As the Fifth Circuit noted, "the inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to substantial limitation of the activity of working." See Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 727 (5th Cir. 1995) (citing Chandler v. City of Dallas, 2 F.3d 1385, 1391 n. 18 (5th Cir.1993), cert. denied, 511 U.S. 1011 (1994)). "An impairment that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or as not substantially limiting one." Jasany v. United States Postal Service, 755 F.2d 1244, 1249 n. 3 (6th Cir. 1985) (interpreting the Rehabilitation Act). The Code of Federal Regulations expressly provides that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

The relatively brief period of time Plaintiff missed from work due to the surgery itself is not actionable as a "substantial limitation" on the major life activity of working.[6] See Hilburn v. Murata Electronics North America, Inc., 181 F.3d 1220 (11th Cir. 1999) (holding former employee's 38-day absence from work following her heart attack was an insufficient amount of time to support a claim that she was substantially limited in the major life activity of working); Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 646 (2d Cir.1998) (holding one month hospital stay followed by six month home recuperation, coupled with non-particularized and unspecific limitations upon return to work, did not constitute substantial impairment in ability to work); Sanders v. Arneson Prods., 91

---

[6] Leave from work, however, may be deemed a "reasonable accommodation" in certain circumstances for persons with a disability that substantially limits a major life activity. See, e.g. Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638 (1st Cir. 2000) (holding leave beyond one-year job reservation period normally provided under employer's policies was reasonable accommodation under ADA).

F.3d 1351, 1354 (9th Cir.1996) (holding three and a half month impairment with minimal residual effects not substantially limiting); See also 29 C.F.R. pt. 1630, App. § 1630.2(j) (Appendix to regulations states "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities"). The Code of Federal Regulations identifies three factors to consider in determining whether an individual is substantially limited in a major life activity: "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). The First Circuit has held that a five week work absence and a later four month period of inability to run meetings for was not impairment significant enough to trigger the ADA's obligation on the employer. Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997). In the present case, the Plaintiff testified he missed 36 days from work due to prostate cancer, and 10-20 days due to his skin cancer. See Pl.'s depo. pp. 103, 112-113. This brief absence cannot support a claim of "substantial limitation" of the major life activity of working.

Other Courts have found that suffering from cancer did not substantially limit the major life activity of work or otherwise implicate the ADA. See, e.g. E.E.O.C. v. R.J. Gallagher Co., 181 F.3d 645 (5th Cir. 1999) (holding company president's blood cancer did not result in substantial limitation of his major life activity of working under ADA, where, at time of alleged discriminatory treatment, president's cancer had gone into complete remission and his doctors had cleared him for an unqualified return to work, and, though president had to return to hospital for six monthly chemotherapy treatments, he could still access his job and all of its accoutrements); Ellison v. Software Spectrum, Inc., 85 F.3d 187 (5th Cir. 1996) (holding employee's breast cancer treatment and medication caused nausea, fatigue, swelling, inflammation and pain, however employee admitted

she could perform her essential job responsibilities with modified work schedule thus the ailment did not substantially limit the major life activity of work so as to establish ADA claim); Gordon v E.L. Hamm & Assocs., 100 F3d 907 (11th Cir. 1996) (holding that the side effects of an employee's chemotherapy treatments did not substantially limit the employee's ability to work under ADA because treatments were delivered on an outpatient basis, the doctor observed that the employee handled the treatments well, and the employee admitted that he was fully capable of working); Pimental v. Dartmouth-Hitchcock Clinic, 236 F.Supp.2d 177 (D.N.H. 2002) (holding employee, a registered nurse diagnosed with and treated for breast cancer, failed to demonstrate that such cancer substantially limited her ability to care for herself, sleep, or concentrate where employee's own affidavit and deposition testimony stated that the most substantial side-effects she experienced were short-lived); Alderdice v. American Health Holding, Inc., 118 F.Supp.2d 856 (S.D.Ohio 2000) (ruling employee who was terminated following surgery and treatment for breast and cervical cancer could not establish that her cancer was a "disability" under the ADA, though employee's ability to work was substantially limited during such time; at the time of her termination, employee's cancer was in remission); Schwertfager v. City of Boynton Beach, 42 F. Supp. 2d 1347 (S.D. Fla. 1999) (Former city employee who had breast cancer and reconstructive surgery did not establish that she was disabled as required for ADA claim although cancer and reconstructive surgery involved anatomical loss and affected lymphatic, skin, and endocrine systems, there was no evidence that employee was incapacitated at work or in her daily activities, that she had reported to hospital on daily basis, or that she suffered from any substantially limiting impairment of a significant duration); but see Braverman v. Prenobscot Shoe Company, 859 F. Supp. 596 (D. Maine 1994) (holding it is a question of material fact as to whether a employee who had suffered from cancer and had radiation treatment suffered a disability under the ADA). Thus, neither Plaintiff's cancer, nor his relatively

brief absence from work for treatment, "substantially limited" the Plaintiff's major life activity of working, precluding Plaintiff's claim under the ADA.

### 2. Plaintiff Did Not Need nor Seek Accommodations for His Alleged Disability

Assuming arguendo that Plaintiff suffered a "disability" as defined by the ADA, Plaintiff here still cannot establish a prima facie case under the Act. Plaintiff must prove he was "qualified to perform the essential functions of the job, with or without essential accommodations" as an element of his ADA claim. See Jacques v. Clean-UP Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996). The Defendant asserts Plaintiff was not qualified for the position of Provisional Chief, as set forth below, however this determination was based upon Plaintiff's job performance, not upon any alleged disability.

Indeed, Plaintiff never notified Dracut of his disability. Plaintiff acknowledged during his deposition that he did not tell his employers that he suffered from prostate cancer. See Pl.'s Depo. pp. 109-110. In fact, although he told his employers in general terms that he would be out for "surgery," Plaintiff did not provide any further information because he "felt that it was a private matter and didn't want to discuss it with them." See Pl.'s Depo. pp. 108-109. Plaintiff instructed his Doctors not to advise his employers of the reason for his surgery. See Id. at p. 109. Furthermore, his doctors notes, indicating he could return to work as of October 12, do not indicate that he could not perform the essential functions of his job. See F. McGovern, M.D. Ltrs. dtd. 8/18/04 & 9/8/04. Neither the Police Chief nor the Town Manager knew the nature of the Plaintiff's surgery for prostate cancer until the filing of this lawsuit. See Aff. of L. Panas ¶ 8; Aff. of D. Piendak ¶ 14.

When determining what is a "reasonable accommodation," the EEOC regulations that implement the ADA do not mandate that an employer provide an interactive process, although the case law recommends employers do so. See Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 513-14

(1st Cir.1996); see also 29 C.F.R. § 1630.2(o) (1)(iii) (stating "it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual.") The First Circuit follows the principle that "[l]iability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown. But where, as here, the employer does not obstruct the process, but instead makes reasonable efforts both to communicate with the employee and provide accommodations based on the information it possessed, ADA liability simply does not follow." Phelps v. Optima Health, Inc., 251 F.3d 21, 28 (1st Cir. 2001) (quoting Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1137 (7th Cir.1996)). In the present case, Plaintiff readily admits that he never sought any accommodations from his employer, nor communicated the existence of his prostate cancer. There can be no liability for the Town of Dracut under the ADA for not providing accommodations for Plaintiff's alleged "disability."

### 3. **Plaintiff Was Not Subject to Adverse Employment Action Due to the Alleged Disability**

Assuming that the bypass of Plaintiff for promotion to Provisional Chief was an "adverse job action" there is simply no evidence that the decision was due to Plaintiff's alleged disability.[7] There cannot be any liability where the employer was not even aware of the alleged reason for Plaintiff's absence from work. See Benoit v. Technical Mfg. Corp., 331 F.3d 166 (1st Cir. 2003) (holding employee with back problems failed to show causal connection between his disability and his termination, as required for claim of retaliation under the ADA, where the supervisor who fired employee was unaware of employee's injury or complaints). Nor does the fact that the bypass for

---

[7] Although Defendants have not found a First Circuit case specifically defining the term under the ADA, another Circuit Court has stated that to establish "an adverse employment action an employee must show a 'tangible change in duties or working conditions that constituted a material employment disadvantage.'" Moisant v. Air Midwest, Inc., 291 F.3d 1028, 1031 (8th Cir.2002) (citation omitted). Arguably, being passed over for promotion does not fit within this definition.

12

promotion to Provisional Chief occurred after Plaintiff's surgery by itself establish causation. Rejecting a similar argument the First Circuit stated that where a Plaintiff "relies primarily on the timing of events, saying he was discharged right after he asked for an accommodation ... that narrow focus ignores the larger sequence of events and also the larger truth. The larger picture undercuts any claim of causation." Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997). The bypass for promotion in this case was simply not causally related to Plaintiff's alleged "disability."

### 4. Defendant had Legitimate Non-Discriminatory Grounds for its Employment Actions

In ADA cases involving evidence of discrimination that is circumstantial, the burden-shifting analysis of McDonnell Douglas Corp. v. Green applies. See Patten v. Wal-Mart Stores East, Inc., 300 F.3d 21 (1st Cir. 2002). Although the summary judgment record demonstrates the Plaintiff here cannot do so, where an employee can establish a prima facie case of disability discrimination under the ADA, a presumption then arises that employer engaged in discriminatory conduct and the burden shifts to the employer to "articulate a legitimate nondiscriminatory reason for the employee's termination." Pages-Cahue v. Iberia Lineas Aereas de Espana, 82 F.3d 533, 536 (1st Cir.1996) (quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir.1993)); see also Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 334 (1st Cir.1997); Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir.1996). Once the defendant presents nondiscriminatory grounds for having taken the adverse action, the presumption disappears and plaintiff must come forth with evidence showing that the proffered reasons were both false and a pretext for discrimination. See Ruiz v. Posadas de San Juan Assoc., 124 F.3d 243, 247 (1st Cir.1997) (plaintiff must establish that alleged reason was pretextual and that true motive was discrimination); Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 673 (1st Cir.1996) (plaintiff must prove not only that the reasons set forth by the employer were false but also that termination was prompted by

13

discriminatory animus); Hidalgo, supra 120 F.3d at 335 (reason given was false and discrimination was the real motive).

In the present case, Defendant's legitimate non-discriminatory grounds for passing over Plaintiff for the position of Provisional Police Chief are plenary. Of course, as a threshold matter, the Defendant determined that Lt. Richardson was a better candidate based upon his leadership skills, management ability, and absence of any record of discipline or sick leave abuse. See, e.g. Hernandez Marrero v. Crowley American Transport, Inc., 206 F.Supp.2d 279 (D.P.R. 2002) (holding employer decision that two candidates chosen for positions were much more qualified than plaintiff was evidence of legitimate, nondiscriminatory reason for its hiring choices). Both the Town Manager and Chief Panas identified numerous shortcomings in Plaintiff that warranted bypassing him for the Provisional Chief's position. These included 1) Plaintiff's earlier noticed retirement and receipt of additional pay therefor; 2) Plaintiff's sick leave usage patterns suggestive of his work ethic and lack of leadership; 3) Plaintiff was found to have violated the conflict of interest laws in 1997; 4) Plaintiff was suspended for three days in 1999 for violating Department Rules; 5) Plaintiff did not sign up for the position of Provisional Deputy Chief in 2003 demonstrating disinterest in a leadership role; 6) Plaintiff did not provide regular input to Chief Panas in the management of the Department; and 7) Plaintiff did not sit for the Deputy Chief exam demonstrating disinterest in leadership of the Department. Plaintiff's disinterest in a leadership role in the Department was also evident from his own announced retirement, which he did not formally withdraw until late December 2004 after the Town Manager had decided to appoint Lt. Richardson. Furthermore, the results of the civil service exam in May 2005, which Plaintiff failed and Lt. Richardson passed, merely serve to confirm that the Town made the proper decision to bypass Plaintiff as Provisional Chief.

### B. Plaintiff's State Law Claims Fail

Under 28 U.S.C. § 1367, the "district court may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims under which it has original jurisdiction." 28 U.S.C. § 1367(c); see also Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir.1995) (stating "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit ... will trigger the dismissal without prejudice of any supplemental state-law claims.") "In a federal-question case, the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction but, rather, sets the stage for an exercise of the court's informed discretion." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir.1996). In the present case, the Plaintiff's state law claims "arise from the same nucleus of operative facts" upon which the federal claim is based. See Roche supra at 256. Should this Court exercise its discretion, Defendant is entitled to summary judgment as to the state law claims for the following reasons.

### 1. No Discrimination Claim under Massachusetts General Laws ch. 151B.[8]

Plaintiff cannot establish either the procedural or factual requisites for a discrimination claim under state law. Massachusetts General Laws Chapter 151B § 4, paragraph 2, prohibits discrimination in employment because of a handicap. In order to state a viable claim for discrimination under Chapter 151B, a Plaintiff must plead and prove four elements to prevail on a claim of discrimination in employment: membership in a protected class, harm, discriminatory animus, and causation. See Lipchitz v. Raytheon Co., 434 Mass. 493, 502, 751 N.E.2d 360 (2001).

---

[8] Plaintiff's Complaint incorrectly cites the statute as Mass. Gen. L. 151, Sec. 4(16). The correct cite should be Mass. Gen. L. 151B § 4(16). The law section cited in the Complaint formerly dealt with minimum fair wages and was repealed in 1973.

15

This Plaintiff cannot establish, and Defendant is entitled to summary judgment.

### a. **Plaintiff Failed to Exhaust his Administrative Remedies**

The preliminary forum for bringing an action under Chapter 151B is the Massachusetts Commission Against Discrimination ("MCAD"). See Mass. Gen. L. ch. 151B §§ 5, 9; see also Sereni v. Star Sportswear Mfg. Corp., 24 Mass. App. Ct. 428, 429, 509 N.E.2d 1203 (1987) (holding that a timely complaint must be filed with the MCAD before a plaintiff can proceed with an action in the Superior Court).[9] The dual purpose of the requirement that an action for unlawful discrimination be preceded by filing of complaint with Massachusetts Commission Against Discrimination is (1) to provide the MCAD with an opportunity to investigate and conciliate claim of discrimination, and (2) to give notice to the defendant of potential suit. Carter v Commissioner of Correction, 43 Mass. App. Ct. 212, 681 N.E.2d 1255 (1997).

In the present action, Plaintiff has failed to bring an action before the MCAD. "It has repeatedly been held that a plaintiff's failure to file a complaint with the MCAD within the statutory six-month filing period constitutes grounds for dismissal."[10] DeFazio v. Delta Air Lines, Inc., 849 F. Supp. 98, 101 (D.Mass. 1994) (citing Sereni v. Star Sportswear Mfg. Corp., 509 N.E.2d 1203, 1204 (1987) ("In the absence of a timely complaint to the MCAD, there may be no resort to the courts"); Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 475 N.E.2d 1227, 1228 (1985) ("a litigant

---

[9] Section 9 of Chapter 151B provides that a party may file an action in court ninety days after the filing of a complaint with the MCAD, or sooner if a MCAD Commissioner assents, and that, if a party chooses to do so, the complaint before the MCAD will be dismissed "and the [party] shall be barred from subsequently bringing a complaint on the same matter before the Commission." Mass. Gen. L. ch. 151B § 9.

[10] The Massachusetts Legislature amended the language of Section 5 to increase the statute of limitations from "six months" to "300 days." See 2002 Mass. Acts ch. 223 § 1 (effective Aug. 7. 2002). The Legislature specifically provided that the new limitations period "shall only apply to claims arising after the effective date of this act." See 2002 Mass. Acts ch. 223 § 4 (effective Aug. 7. 2002).

is first to follow the administrative route [which] accords with the usual requirement that administrative remedies are to be exhausted before resort is had to the courts"); Treadwell v. John Hancock Mut. Life Ins. Co., 666 F.Supp. 278, 282 (D.Mass.1987) ("failure to file a timely charge of discrimination bars a party from bringing a c. 151B, § 5 discrimination action in court")).

### b. There is No Evidence of Discrimination

Furthermore, even looking at the discrimination claims on the merits, as discussed above, the Plaintiff never advised Dracut of his purported handicap, nor did he request a reasonable accommodation. Similar to the ADA, under General Laws Chapter 151B, "[t]he term 'handicap' means (a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment, or (c) being regarded as having such impairment, but such term shall not include current, illegal use of a controlled substance ..." Mass. Gen. L. ch. 151B § 1 ¶17. The Massachusetts Courts, when interpreting the State anti-discrimination statutes, relies upon "Federal case law construing the cognate Federal unlawful discrimination statutes, unless [the court] discern[s] some reason to depart from those rulings." See City of New Bedford v. Mass. Com'n Against Discrim., 440 Mass. 450, 463 n. 26, 799 N.E.2d 578, 588 n. 26 (2003). Thus, for the identical reasons that Plaintiff's ADA claim fails, his state law discrimination claim must also fail.[11]

### 2. No Direct Right of Action Under Article CXIV of the Massachusetts Constitution

Plaintiff's Complaint attempts to bring a direct cause of action under the Massachusetts Constitution Article 114. See Pl.'s Compl. Ct. II. This Article of the Massachusetts Constitution

---

[11] The Massachusetts Courts employ the McDonnell Douglas burden-shifting scheme when deciding cases under Chapter 151B. See, e.g. Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 825 N.E.2d 522 (2005).

states: "No otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth." Mass. Const. Amend. Art CXIV. While Article CXIV may appear relevant to Plaintiff's allegations, this Article does not provide an independent basis for a cause of action. The Supreme Judicial Court of Massachusetts has held that "[a] claim under G.L. c. 151B provides adequate relief to redress handicap discrimination by an employer and, therefore, <u>precludes</u> a right of action arising directly under the Massachusetts Constitution." <u>Tate v. Dept. of Mental Health</u>, 419 Mass. 356, 365 (1994) (emphasis added). Furthermore, the United State Court of Appeals has declined to recognize a right to a cause of action based on Article CXIV. <u>Grubka v. Bay State Abrasives</u>, 803 F.2d 746, 748 (1st Cir. 1986). The Defendant is therefore entitled to summary judgment on this count of the Complaint.

### 3. **No Cause of Action for Civil Service Claims under Mass. Gen. L. ch. 31, sec. 15**

Plaintiff's fifth and final count alleges that Dracut violated Mass. Gen. L. ch. 31, sec. 15 by refusing to appoint the Plaintiff as the Provisional Chief. This provision of the General Laws, however, expressly provides discretion to the appointing authority to make a provisional promotion of candidates who are not in the next higher title. The statute states: "An appointing authority **may**, with the approval of the administrator ... make a Provisional promotion of a civil service employee in one title to the next higher title in the same departmental unit. ... If there is no such employee in the next lower title who is qualified for and willing to accept such a provisional promotion **the administrator may authorize a provisional promotion of a permanent employee in the departmental unit without regard to title** ..." Mass. Gen. L. ch. 31 § 15. (emphasis added). Notably, since the filing of this lawsuit, the civil service examination results revealed that Plaintiff did not pass the examination for the position of Police Chief, and thus was not eligible for

appointment to the permanent position as Police Chief. See Pl.'s Depo. pp. 73-75.

The Supreme Judicial Court has held that the civil service law "neither (1) compels nor (2) permits" the personnel administrator to require the appointing authority submit "sound and sufficient reasons" when making a provisional promotion of a person whose name does not appear on a list of eligible candidates. Kelleher v. Personnel Adm'r of Dept. of Personnel Admin. 421 Mass. 382, 385, 657 N.E.2d 229, 231 - 232 (1995). Despite this holding, the Defendant did submit a list of "sound and sufficient" reasons for the bypass. See D. Piendak Aff. ¶¶ 10-11. Chapter 31 provided Dracut with the discretion to by-pass the Plaintiff if it is determined Plaintiff is "not qualified for" the position. The Defendant provided the Civil Service Administrator with sound and sufficient reasons for appointing Lieutenant Richardson, which was approved by the administrator. The Massachusetts Supreme Judicial Court has held that in the absence of some constitutional claim of right, if the civil service statutes could not fairly be interpreted to entitle an employee to receive more consideration, that was end of the matter. Kelleher v. Personnel Adm'r of Dept. of Personnel Admin., 421 Mass. 382, 657 N.E.2d 229 (1995). So too here, the Defendant complied with the civil service statutes, and that is the end of the matter.

Furthermore, a Plaintiff must exhaust his administrative remedies prior to seeking relief in another forum, such as this lawsuit. Iannelle v. Fire Com'r of Boston, 331 Mass. 250, 252 (1954); see also Reidy v. Acting Director of Civil Service, 354 Mass. 760 (1952) (holding that a civil service applicant, who had not appealed a decision, had not exhausted her remedy and she was not entitled to petition for a writ of certiorari to require her appointment.) Section 2 of Chapter 31 provides that the Civil Service Commission of Massachusetts has the power to "hear an decide appeals by a person aggrieved by any decision, action, or failure to act by the administrator ..." Mass. Gen. L. ch. 31 § 2(b). Section 2 continues to state that "[n]o person shall be deemed to be aggrieved under the

provisions of this section unless such person has made specific allegations in writing that a decision, action, or failure to act on the part of the administrator was in violation of this chapter ..." Id. A Plaintiff who alleges that an appointing authority has failed to follow the requirements of Chapter 31 has six months to file an action based on the alleged illegal act. M.G.L. 31 § 42. In the present case, Plaintiff has, in fact, appealed to the Civil Service Commission from the administrator's decision endorsing the bypass. See Pl.'s Depo. pp. 87-88. The Commission has not yet issued a decision. See Pl.'s Depo. pp. 79. Therefore, Plaintiff's cause of action based on a violation of Chapter 31 is premature and must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Defendant, Town of Dracut, respectfully requests that this Honorable Court grant its Motion for Summary Judgment as to all counts of Plaintiff's Complaint against it, together with costs and attorneys fees and such other relief this Court deems just and proper.

Respectfully Submitted,
The Defendant,
TOWN OF DRACUT
By its Attorneys,

PIERCE, DAVIS & PERRITANO, LLP

John J. Cloherty III, BBO # 566522
Ten Winthrop Square
Boston, MA 02110
(617) 350-0950

CERTIFICATE OF SERVICE
I hereby certify that on this day a true copy of the above document was served upon each attorney of record, or pro se litigant, by electronic mail.

11/21/05
Date